E-FILED
Friday, 21 April, 2006  03:53:33 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT ROCK ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | |
| ) | |
| Plaintiff,          ) | Criminal No. 06-40023 |
| v.                      ) | |
| ) | |
| CHARLES RAY MCSWAIN,         ) | |
| ) | |
| Defendant.           ) | |

FILED
APR 21 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## COOPERATION PLEA AGREEMENT AND STIPULATION OF FACTS

Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, the United States of America, by Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Matthew J. Cannon, Assistant United States Attorney, and the defendant, Charles Ray McSwain, personally and by the defendant's attorney, George F. Taseff, hereby enter into this plea agreement.

1.      This document contains the complete and only plea agreement between the United States Attorney for the Central District of Illinois and the defendant. This agreement supersedes and replaces any and all prior formal and informal, written and oral, express and implied, plea agreements between the parties. No other agreement, understanding, promise, or condition between the United States Attorney for the Central District of Illinois and the defendant exists, except as set forth in this plea agreement.

2.      This plea agreement is binding only upon the United States Attorney for the Central District of Illinois and the defendant. It does not bind any United States Attorney outside the Central District of Illinois, nor does it bind any state or local prosecutor. In addition, the plea agreement does not bind the Tax Division of the United States Department of Justice or the Internal Revenue Service of the United States Department of the Treasury.

3. This agreement is made pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure. Therefore, if the Court does not accept the recommendations of the parties, the defendant does not have the right to withdraw his plea of guilty.

## CHARGES, ELEMENTS, AND PENALTIES

4. The defendant will plead guilty to Counts One and Two of the Indictment in which the defendant is charged in Count One with the conspiracy to distribute and possess with intent to distribute marijuana in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(B), and in Count Two with possession with intent to distribute marijuana in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

5. The defendant has read the charges to which the defendant is pleading guilty, and the charges have been explained to the defendant by the defendant's attorney. Furthermore, the defendant fully understands the nature and elements of the crimes to which the defendant is pleading guilty. To sustain the charges contained in Counts One and Two of the Indictment, the United States must prove the following propositions beyond a reasonable doubt:

## COUNT ONE
## CONSPIRACY TO DISTRIBUTE AND POSSESS
## WITH INTENT TO DISTRIBUTE MARIJUANA
## 21 U.S.C. § 846

First, that the conspiracy to distribute and possess with intent to distribute 100 kilograms or more of a mixture and substance containing a detectible amount of marijuana, as charged in Count One of the Indictment, existed; and,

Second, that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy.

## COUNT TWO
## POSSESSION WITH INTENT TO DISTRIBUTE MARIJUANA
## 21 U.S.C. § 841(a)(1) and (b)(1)(B)

First, that the defendant knowingly or intentionally possessed 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana; and

Second, that the defendant possessed the marijuana with the intent to deliver it to another person.

6. The defendant understands and agrees that the offenses to which he shall plead guilty carry the following potential penalties:

### POTENTIAL PENALTIES – COUNT ONE

- by virtue of the amount of controlled substances involved in the offense, there is a mandatory minimum term of five (5) years in prison and a maximum of forty (40) years in prison;

- a maximum fine of $2 million;

- at least four (4) years of supervised release and a maximum of a life term of supervised release; and

- a $100 mandatory special assessment.

### POTENTIAL PENALTIES – COUNT TWO

- by virtue of the amount of controlled substances involved in the offense, there is a mandatory minimum term of five (5) years in prison and a maximum of forty (40) years in prison;

- a maximum fine of $2 million;

- at least four (4) years of supervised release and a maximum of a life term of supervised release; and

- a $100 mandatory special assessment.

## TOTAL POTENTIAL PENALTIES – COUNTS ONE AND TWO

- at least five (5) years in prison (ten (10) years if sentences served consecutively) and a maximum of 40 years in prison (eighty (80) years if sentences served consecutively);

- a maximum fine of $4 million;

- at least four (4) years of supervised release (eight (8) years if sentences served consecutively) and a maximum of a life term of supervised release; and

- a $200 mandatory special assessment.

7.  The defendant further understands that upon violation of any of the terms of the defendant's supervised release, the supervised release may be revoked and the defendant may be imprisoned for all or part of the supervised release period without credit for time previously served.

8.  The defendant understands and agrees that the Court may be required to order the defendant to pay restitution. The parties to this agreement have not reached a determination on the issue of restitution. Restitution may include the cost of incarceration and supervision. The parties acknowledge that the Court may order restitution in whatever amount it deems proper.

## STATUTORY AND APPEAL WAIVERS

### Waiver of Right of Appeal from Conviction and Sentence

9.  The defendant is aware that federal law, specifically, Title 28, United States Code, Section 1291, affords a defendant a right to appeal a final decision of the district court and that federal law, specifically, Title 18, United States Code, Section 3742, affords a defendant a right to appeal the conviction and/or sentence imposed. Understanding those rights, and having thoroughly

discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives the right to appeal any and all issues relating to this plea agreement and conviction and to the sentence, including any fine or restitution, within the maximum provided in the statutes of conviction, and the manner in which the sentence, including any fine or restitution, was determined, on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.

### Waiver of Right to Collateral Attack

10.     The defendant also understands that he has a right to attack the conviction and/or sentence imposed collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States; that he received ineffective assistance from his attorney; that the Court was without proper jurisdiction; or that the conviction and/or sentence was otherwise subject to collateral attack. The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255. The defendant and the defendant's attorney have reviewed Section 2255, and the defendant understands his rights under the statute. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence. The defendant's attorney has fully discussed and explained the defendant's right to attack the conviction and/or sentence collaterally with the defendant. The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of the ineffectiveness of the defendant's counsel was made by the defendant alone notwithstanding any advice the defendant may or may not have received from the defendant's attorney regarding this right. Regardless of any advice the defendant's attorney may have given the defendant, in exchange

for the concessions made by the United States in this plea agreement, the defendant hereby knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence. The rights waived by the defendant include his right to challenge the amount of any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255.

## ADVISORY SENTENCING GUIDELINES

11.    The defendant understands that the Court will calculate the defendant's offense level and criminal history category under the United States Sentencing Guidelines, and that the Court will use those calculations to arrive at an advisory sentencing range under the Guidelines. The defendant understands that the Court must consider the advisory Sentencing Guideline range when imposing sentence. The Court shall also consider the other factors listed under Title 18, United States Code, Section 3553(a) in determining the specific sentence to be imposed. The defendant understands that although the Sentencing Guidelines are advisory, the Court may choose to impose sentence in accordance with the Sentencing Guidelines.

12.    Based on the information currently available, the defendant and the United States agree on the following points regarding the application of the Sentencing Guidelines to the offense to which the defendant is pleading guilty:

    a.    The parties agree, based upon facts currently known by the United States, that the defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct in accordance with Section 3E1.1 of the Sentencing Guidelines and, therefore, a two-level reduction in the offense level is appropriate. Acceptance of personal responsibility shall include cooperating fully with the United States

Probation Office in the preparation of a presentence report and not committing any bond violations while on pretrial release (if applicable), including but not limited to the commission of any local, state or federal offenses. This agreement does not preclude the United States from changing its position if new evidence to the contrary is discovered or if the defendant later demonstrates a lack of acceptance of personal responsibility for the defendant's criminal conduct.

    b. The parties also agree that the defendant qualifies for an additional one level reduction in the defendant's offense level pursuant to United States Sentencing Guidelines Section 3E1.1(b) because the defendant timely notified the United States Attorney's Office of the defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid trial preparation and permitting the Court to allocate its resources efficiently.

13. The defendant and the United States agree that the above statements regarding Sentencing Guidelines calculations are not binding on the Court, and relate only to the positions the parties take regarding the applicable advisory Sentencing Guideline range based upon the information of which they are currently aware. The Court will remain free to make its own independent determination of the applicable advisory Sentencing Guideline range and to impose whatever sentence it deems appropriate.

14. The defendant agrees that at the time of sentencing, the Court will not be bound by any recommendation made by any party, and that the Court will be free to impose whatever sentence it deems appropriate up to the statutory maximum. The defendant agrees and understands that the defendant will not be allowed to withdraw the defendant's guilty plea because of an objection to the calculation of the Sentencing Guidelines, or to the Court's sentencing findings or rulings, or because the defendant receives a sentence higher than that recommended under the plea agreement.

15. The United States reserves the right, in its sole discretion, to make a motion at the time of sentencing for a downward departure from the advisory Sentencing Guideline range pursuant to United States Sentencing Guidelines Section 5K1.1, and from any mandatory minimum sentence pursuant to Title 18, United States Code, Section 3553(e), if the defendant provides substantial assistance in the investigation or prosecution of other criminal offenses. The extent of any such recommended departure will depend solely upon the United States' evaluation of the nature, extent, and value of the defendant's assistance, including the defendant's truthfulness.

## DEFENDANT'S OBLIGATIONS

### Cooperation

16. As a condition of this entire plea agreement, the defendant will cooperate fully with law enforcement officials in the investigation and prosecution of other individuals involved in drug crimes and related matters, in accordance with the terms of the Cooperation Agreement signed by the defendant and his counsel on March 28, 2006, which Cooperation Agreement is appended hereto as Exhibit A.

17. The defendant agrees to waive and waives any rights the defendant may have under the Speedy Trial Act, and the defendant understands that his sentencing may be delayed until his cooperation has been completed so that at sentencing the court will have the benefit of all relevant information.

18. The defendant and his attorney acknowledge that they have reviewed, and the defendant understands, the possible application of Title 18, United States Code, Section 3553(e). They further acknowledge, consistent with Application Note 3 to U.S.S.G. Section 5K1.1, that the United States is in the best position to assess the value of the defendant's cooperation to the United

States and its law enforcement efforts. In return for receiving the opportunity to cooperate with the government and for the opportunity to be considered by the government for a motion and recommendation for a downward departure pursuant to Section 3553(e), the defendant and his attorney agree to limit any argument regarding the extent of a downward departure for substantial assistance to the government to only those grounds specifically set forth in Section 5K1.1 and its application notes.

### Special Assessment

19. The defendant further understands and agrees to pay the mandatory $200 Special Assessment for the two counts of the Indictment to which the defendant is entering pleas of guilty, as required under Title 18, United States Code, Section 3013. The defendant agrees to pay this mandatory special assessment at the time of sentencing by delivering a check or money order made payable to the United States District Court and understands that he will be required to do so as a condition of this plea agreement. The failure to comply with this requirement, however, will not constitute grounds for the defendant to withdraw any plea of guilty.

### THE UNITED STATES ATTORNEY'S OBLIGATIONS

20. The United States Attorney for the Central District of Illinois agrees to bring no additional criminal charges in the Central District of Illinois against the defendant relating to or arising from the offenses charged in this Indictment, except for any crime of violence and any crime unknown to the United States Attorney for the Central District of Illinois prior to the time this plea agreement is signed by the parties.

21. The United States agrees that at the time of sentencing it will fully inform the Court of the nature, extent, and value of any cooperation rendered by the defendant.

## FACTUAL BASIS

22. The defendant will plead guilty because the defendant is in fact guilty of Counts One and Two contained in the Indictment. In pleading guilty to the charges, the defendant stipulates to and admits to the following facts:

a. In January 2006, Charles Ray McSwain, Winona McSwain and Justin Delvis Morgan (collectively referred to as "defendants"), began a trip from Texas to Cleveland, Ohio with a shipment of marijuana. The defendants transported the marijuana in a GMC Yukon registered in the name of Charles Ray McSwain's ex-wife, who is unnamed here.

b. On January 24, 2006, Justin Delvis Morgan ("Morgan") was driving that same GMC Yukon when a Trooper with the Illinois State Police initiated a traffic stop on Interstate 80 in Henry County, Illinois, which is in the Central District of Illinois. At the time of the traffic stop, Charles and Winona McSwain, who are brother and sister, were passengers in the GMC Yukon. The Trooper initiated the stop because there was a monkey figurine hanging from the rear view mirror that could materially obstruct the driver's view. Morgan produced a Texas drivers license to the Trooper.

c. During the course of the traffic stop, Morgan was seated with the Trooper in the Trooper's squad car. Morgan told the Trooper that he and the McSwains were on their way to Chicago to pick up "a load of cars." Morgan knew at the time that he made that statement to the Trooper that the statement was false. Morgan made this statement to the Trooper in an effort to conceal the drug trafficking activities of himself and Charles and Winona McSwain. The Trooper conducted a routine check of Morgan's license and learned that the license was invalid. After the Trooper learned this, the Trooper asked Morgan if there was anything illegal in the car. Morgan said

no. Morgan knew at the time that he made this statement to the Trooper that the statement was false. Morgan made this statement to the Trooper in an effort to conceal the drug trafficking activities of himself and Charles and Winona McSwain.

        d. The Trooper then approached the GMC Yukon again. The Trooper spoke to the passengers in the GMC Yukon, Charles and Winona McSwain. Charles McSwain told the Trooper that the defendants were "on vacation" and going to Chicago to visit his "Aunt Jenny." Charles Ray McSwain also stated that he did not know where his Aunt Jenny lived and that he would have to call her upon arriving in Chicago. Charles Ray McSwain also told the Trooper that this was the defendants' first trip to Chicago. The statements by Charles Ray McSwain regarding the purpose of the defendants' trip were inconsistent with the statements made by Morgan to the Trooper. Charles Ray McSwain knew that the statements he made to the Trooper were false when made. Charles Ray McSwain made these statements to the Trooper in an effort to conceal the drug trafficking activities of himself, Winona McSwain and Justin Delvis Morgan. The defendants knew that the purpose of their trip was not to visit an "Aunt Jenny" in Chicago. Charles Ray McSwain, Winona McSwain, and Justin Delvis Morgan all knew that the true purpose of the trip was to transport a load of marijuana, approximately 755 pounds, to Cleveland, Ohio.

        e. After speaking with Charles Ray McSwain, the Trooper returned to his squad car to speak further with Justin Delvis Morgan. At this time, Morgan told the Trooper that he was unaware of the fact that the defendants were visiting someone in Chicago. Morgan also told the Trooper that he was not aware that Winona McSwain, Morgan's wife, had relatives in Chicago, Illinois.

   f. After the Trooper finished with the paperwork regarding Morgan's traffic violations and after the Trooper told Morgan he was free to go, the Trooper asked Morgan if he, Morgan, would agree to answer some additional questions. Morgan agreed to do so. At this time, the Trooper asked Morgan what was under the blankets in the back storage area of the GMC Yukon. Morgan told the Trooper that he did not know what was under the blankets. Morgan knew that this statement to the Trooper was false when made. Morgan made this statement to the Trooper in effort to conceal the drug trafficking activities of himself and Charles and Winona McSwain. The Trooper then asked Morgan if he would consent to a search of the GMC Yukon. Morgan told the Trooper that the Trooper would need to ask "Corky." "Corky" is a nickname for Charles Ray McSwain.

   g. The Trooper returned to the GMC Yukon and then asked Charles Ray McSwain for consent to search under the blankets located in the cargo area of the GMC Yukon. Charles Ray McSwain consented to the Trooper's request. Charles Ray McSwain also informed the Trooper at that time that the defendants were transporting a shipment of marijuana.

   h. Troopers of the Illinois State Police then searched the GMC Yukon the defendants were travelling in and seized approximately 755 pounds of a substance that field-tested positive for marijuana.

   i. Charles Ray McSwain, Winona McSwain, and Justin Delvis Morgan knew that the marijuana seized from the GMC Yukon was obtained from individuals from Mexico, who are unnamed here. Charles Ray McSwain, Winona McSwain, and Justin Delvis Morgan also knew that the marijuana they were transporting was orginally shipped from Mexico to Texas, and that they were transporting the marijuana from Texas to Cleveland, Ohio. In Cleveland, Ohio, the defendants

were to deliver the shipment of marijuna, approximately 755 pounds, to individuals who are unnamed here for distribution.

  j. Charles Ray McSwain agreed to pay Winona McSwain and Justin Delvis Morgan $14,000 collectively to assist in transporting this shipment of marijuana from Texas to Cleveland, Ohio. Charles Ray McSwain was to be paid approximately $60.00 per pound by an individual who is unnamed here for transporting the marijuana. In the six months leading up to the traffic stop in Henry County, Illinois, Charles Ray McSwain was paid at least $100,000 by individuals who are unnamed here to transport multiple shipments of marijuana from Texas to various locations in the United States.

  k. Winona McSwain and Justin Delvis Morgan have also transported multiple shipments of marijuana from Texas to various locations in the United States for distribution. Some of these trips were made with Charles Ray McSwain, but others were not. In the six months leading up to the traffic stop, Winona McSwain and Justin Delvis Morgan were paid at least $24,000 collectively to transport these marijuana loads from Texas to their destination points throughout the United States.

  l. Charles Ray McSwain, Winona McSwain, and Justin Delvis Morgan knew that the GMC Yukon they were travelling in on January 24, 2006 in Henry County, Illinois contained marijuana, approximately 755 pounds. Charles Ray McSwain, Winona McSwain, and Justin Delvis Morgan also knew that the marijuana they possessed was obtained from individuals in Mexico, who are unnamed here, and that the marijuana was to be transported by the defendants from Texas to Cleveland, Ohio for distribution by individuals who are unnamed here. Charles Ray McSwain, Winona McSwain and Justin Delvis Morgan agreed with each other and other unnamed individuals

to transport the 755 pounds of marijuana they possessed from Texas to Cleveland, Ohio for distribution.

  m. Charles Ray McSwain, Winona McSwain, and Justin Delvis Morgan knew that their conduct in transporting the marijuana as described above was against the law.

## EFFECT OF VIOLATION OF AGREEMENT

23.  The defendant further agrees that if the defendant violates the terms of this plea agreement the United States has the option to declare the plea agreement null and void. In the event the United States exercises its option to declare the plea agreement null and void, the United States will be completely released from all of its obligations under this plea agreement and the United States will be free to seek to vacate the defendant's conviction and sentence, and to reinstate any previously dismissed charges against the defendant or to seek the defendant's resentencing. However, in the event the United States exercises its option to declare the plea agreement null and void, the defendant will not be allowed to withdraw from any previously accepted guilty plea. The defendant also agrees to waive any and all double jeopardy rights, and the applicable statute of limitations should the United States seek to reinstate any charges against the defendant or seek to have the defendant resentenced.

24.  Whether or not the defendant has violated the terms of the plea agreement shall be determined by the Court. The burden of proof shall rest with the United States to establish by a preponderance of the evidence that the defendant violated the terms of the plea agreement.

## WAIVER OF CONSTITUTIONAL RIGHTS

25.  The defendant understands that by pleading guilty the defendant surrenders the following rights among others:

    a.  The right to plead not guilty or persist in the plea of not guilty if already made. If the defendant persisted in a plea of not guilty to the charge the defendant would have the right to a public and speedy trial.

    b.  The right to a trial by jury. The defendant has an absolute right to a jury trial. The jury would be composed of twelve persons selected at random. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict the defendant unless, after hearing all the evidence, it was persuaded that the United States had met its burden of proving the defendant guilty beyond a reasonable doubt. The defendant could also ask for a trial by the Judge instead of a trial by a jury.

    c.  The right to confront and cross-examine adverse witnesses. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to see and hear those government witnesses and the defendant's attorney would be able to cross-examine them. In turn, the defendant's counsel could present witnesses and other evidence on the defendant's behalf. If the witnesses for the defendant refused to appear voluntarily, their attendance could be required through the subpoena power of the court.

    d.  The right against compelled self-incrimination. At a trial, the defendant would have a privilege against self-incrimination so that the defendant could decline to testify, and no inference of guilt could be drawn from the defendant's refusal to testify. If the defendant desired to do so, the defendant could testify on the defendant's own behalf.

26. The defendant understands that by pleading guilty the defendant is waiving all the rights set forth in the prior paragraphs. The defendant's attorney has explained those rights to the defendant and the consequences of the waiver of those rights.

**AGREED:**

**Defendant's Attorney:**

27. I have discussed this plea agreement fully with my client, and I am satisfied that my client fully understands its contents and terms. No threats, promises, or representations have been made, nor agreements reached, express or implied, to induce my client to plead guilty other than those stated in this written Plea Agreement. I have reviewed with my client United States Sentencing Guidelines Sections 1B1.3 and 1B1.4 (relevant conduct).

Date: 4-21-06

S/George Taseff
George F. Taseff
Attorney for Charles Ray McSwain

**Defendant:**

28. I have read this entire Plea Agreement carefully and have discussed it fully with my attorney. I fully understand this Agreement, and I agree to it voluntarily and of my own free will. I am pleading guilty because I am in fact guilty, and I agree that the facts stated in this Agreement about my criminal conduct are true. No threats, promises, or commitments have been made to me or to anyone else, and no agreements have been reached, expressed or implied, to influence me to plead guilty other than those stated in this written Plea Agreement. I am satisfied with the legal services provided by my attorney. I understand that by signing below I am stating that I agree with

everything stated in this paragraph, and I am accepting and entering into this Plea Agreement.

Date: _____     S/Charles McSwain
                        _____
                        Charles Ray McSwain
                        Defendant

**United States:**

29.  On behalf of the United States of America, I accept and agree to this Plea Agreement.

Date: 4/21/06           RODGER A. HEATON
                        UNITED STATES ATTORNEY


                        S/Matthew Cannon
                        _____
                        Matthew J. Cannon
                        Assistant United States Attorney

- 17 -

**U.S. Department of Justice**

*United States Attorney*
*Central District of Illinois*
*Headquarters Office*
*Springfield, Illinois*

---

Rodger A. Heaton
United States Attorney

*Reply to:*
*Quad Cities Division Office*
*1830 Second Avenue, Suite 320*
*Rock Island, Illinois 61201*
*(309)793-5884*
*FAX: (309)793-5895*

March 21, 2006

BY FAX AND U.S. MAIL
George F. Taseff
Assistant Federal Public Defender
401 Main Street
Suite 1500
Peoria, IL 61602

Re: Cooperation Agreement for
<u>Charles Ray McSwain</u>, No. 06-40023

Dear Mr. Taseff:

It is my understanding that your client, Charles Ray McSwain, desires to cooperate with the government in its efforts to enforce federal law on the condition that his statements are protected by a grant of use immunity by the federal government. This letter is intended as a grant of conditional use immunity.

To avoid any misunderstanding, the specific terms of this grant of immunity are as follows:

1. The federal government agrees that no statement made or information provided pursuant to this agreement will be directly used as material evidence against your client in any federal criminal case, except for (1) prosecutions for making false statements or perjury during statements made pursuant to this agreement; (2) prosecutions for felony offenses involving the actual or threatened use of violence, and attempts and conspiracies to commit such, (3) use as impeachment or rebuttal evidence should your client subsequently testify or take a factual position contrary to the information that he provides pursuant to this agreement, (4) forfeiture proceedings, (5) bond or detention hearings, and (6) supervision revocation proceedings. The government will remain free to discharge its duty to the court, if such duty exists under the circumstances, by informing the court of any information that your client provides. The court will also be notified that such information was obtained pursuant to this grant of use immunity.

2. Your client agrees that any statement made or information provided pursuant to this agreement may be directly or indirectly used to obtain leads to other evidence, which evidence may be used against him in any criminal, civil, forfeiture, or administrative hearing, trial or other proceeding, including the sentencing hearing. It is intended by the government and acknowledged by your client that this provision eliminates the need for a <u>Kastigar</u> hearing wherein, absent this provision, the government would be


GOVERNMENT EXHIBIT A

      required to prove that evidence being offered was not obtained through information provided by your client while cooperating with the government.

3. Your client recognizes and agrees that this agreement does not preclude the use of any information provided by your client as evidence in any state or local prosecution. Simply stated, state and local governments and prosecutors are not parties to, nor bound in any manner by, this agreement.

4. Your client agrees that he will provide <u>complete</u> and <u>truthful</u> information to law enforcement officials regarding everything he knows or has reason to believe about the criminal conduct of himself, if any, and that of other persons. Your client also agrees to produce any and all documents and physical evidence of any kind in his possession or under his control which relate to the information that he provides.

5. Your client agrees to provide <u>complete</u> and <u>truthful</u> testimony to any grand jury, trial jury, or judge in any proceeding in which he may be called to testify by the government.

6. You and your client further acknowledge and agree that the federal government's grant of use immunity herein is entirely conditioned upon your client's complete compliance with each and every term of this agreement. Should your client knowingly make any materially false statement or omission in providing information or testimony under this agreement, the federal government will be entitled to use his statements and evidence that he provides to institute and support a criminal prosecution for any offense as well as a prosecution for giving false statements and perjury.

7. For instance, your client must neither conceal or minimize his own actions or involvement in any offense, nor conceal, minimize, fabricate, or exaggerate anyone else's actions or involvement in any offense. He must be completely truthful about the facts whatever those may be.

8. Your client understands that the offenses of giving false statements and of perjury are felonies, each instance of which is punishable by up to five years in prison plus a $250,000 fine.

9. Your client hereby agrees to undergo a polygraph examination to confirm any or all of the information that he provides pursuant to this cooperation agreement.

10. Any material breach of any provision of this agreement by your client will void this agreement in its entirety and will release the federal government from any obligation under this agreement. Any controversy concerning whether your client has knowingly made any materially false statement or omission during his cooperation, or has otherwise materially breached this cooperation agreement, shall be brought to the attention of, and determined by, the U.S. District Court.

11. At this time the government is not making, and has not made, any promise or commitment of any kind to your client regarding the prosecution of any offense or the sentence in any case.

12. This agreement is limited to the statements made and given by your client after the execution of this cooperation agreement and does not apply to statements, if any, given by him prior thereto.

13. This letter embodies the entirety of the federal government's immunity agreement with your client. No other promise or agreement exists between your client and the federal government regarding such immunity.

Very truly yours,

RODGER A. HEATON
UNITED STATES ATTORNEY

By: S/Matthew Cannon
MATTHEW J. CANNON
ASSISTANT U.S. ATTORNEY

We have read this letter entirely, and we understand and completely agree to the above terms. No promises have been made other than those stated in this letter regarding cooperation and use immunity.

S/Charles McSwain
Charles Ray McSwain

Date: March 28, 2006

S/George Taseff
George F. Taseff
Attorney for Charles Ray McSwain

Date: March 28, 2006

- 3 -